IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

ALLAN MICHAEL RUSH,

      Petitioner,

v.                                  CASE NO. 4:09-cv-470-MP-GRJ

KENNETH S. TUCKER,[1]

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. The Petition stems from Petitioner's October 28, 2005, Leon County jury trial conviction for second-degree murder and sexual battery. Petitioner received concurrent life sentences. Respondent filed a response to the Petition and an appendix with relevant portions of the state-court record, and Petitioner filed a reply. (Docs. 13, 18.) Upon due consideration of the Petition, the Response, the Reply, and the state-court record, the undersigned recommends the Petition be denied.

## State Court Proceedings

In June 2004, Petitioner was indicted in Leon County for the March 30, 2004 first-degree murder and sexual battery of his girlfriend. A jury found him guilty of the lesser offense of second-degree murder and of sexual battery using physical force likely to cause serious personal injury committed while the victim was physically helpless to resist. Petitioner's defense was that the sex acts which experts said caused the victim to bleed to death were consensual. The trial court sentenced Petitioner to life in prison.

---

[1]Kenneth S. Tucker became Secretary of the Florida Department of Corrections on August 24, 2011, and is substituted as Respondent.

(Respondent's Exhibit B.) (hereafter "Exh.")  Petitioner appealed his convictions, and the First DCA affirmed without opinion on August 6, 2007.(Exh. J.); *Rush v. State,* 961 So. 2d 940 (Fla 1st DCA 2007).  Mandate issued on August 22, 2007.  (Exh. K.) Petitioner did not seek review in the U.S. Supreme Court.

On July 3, 2008, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850.  Petitioner raised nine grounds for relief in his motion: eight claims of ineffective assistance of counsel and one claim of cumulative error.  The trial court denied relief.  (Exh. M.)  The First DCA affirmed, *per curiam*, and mandate issued November 16, 2009. (Exhs. N, U.); *Rush v. State,* 3 So. 3d 323 (Fla. 1st DCA 2009).

While his Rule 3.850 motion was pending, Petitioner filed a state petition alleging ineffective assistance of appellate counsel.  (Exh. W.)  The First DCA denied the petition on the merits.  (Exh. AA.); *Rush v. State,* 3 So. 3d 679 (Fla 1st DCA 2009).

In the instant Petition, which Respondent concedes is timely, Petitioner asserts six claims: five of ineffective assistance of trial counsel and one claim of cumulative error.  (Doc. 1.)

## <u>Section 2254 Standard of Review</u>

There are limitations on the scope of this Court's review.  Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of

rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-406 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the

state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

### Ineffective Assistance of Counsel

Because Petitioner's claim raises the issue of counsel's effectiveness, a review of *Strickland* is appropriate. To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011). The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of §

2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

### Claim One: Failure to object to statements of the victim under <u>Crawford</u> and <u>Giles</u>

Petitioner alleges that trial counsel should have objected under *Crawford v. Washington*, 541 U.S. 36 (2004) to the testimony of three witnesses who testified as to statements the victim made about her relationship with Petitioner. Petitioner contends that the statements were testimonial and their introduction violated the Confrontation Clause of the Sixth Amendment. Petitioner also argues that trial counsel should have objected under *Giles v. California,* 554 U.S. 353 (2008), and argued "that the forfeiture doctrine requires specific intent in regards to hearsay testimony admitted during trial." (Doc. 1.) The statements were as follows:

The victim's sister, Christina Fields, testified as to three statements made by the victim to her. Trial counsel objected on grounds of hearsay and relevancy. (Exh. E, p. 40.) The State argued that the statements were admissible under the forfeiture by wrongdoing doctrine–i.e., that Petitioner forfeited his right to the hearsay objection because he was responsible for the unavailability of the witness. (*Id.*) Alternatively, the State argued that the statements fell under the then-existing mental, emotional, or physical condition exception to the hearsay rule, as codified at 803(3)(a) of the Florida Evidence Code. (*Id.* at 41.)

The first statement was that the victim told Christina Fields that she was unhappy with Petitioner. The trial court ruled that the statement was admissible only to the sexual battery count because it went to the victim's state of mind, which was relevant to the consent element of the sexual battery charge. (*Id.* at 45.) Next, the trial court ruled that the victim's statement to Christina Fields that she was interested in someone else was admissible, also under the state of mind exception to the hearsay rule. (*Id.* at 45-

46.)    Finally, the trial court ruled that the victim's statement to Christina Fields that she wanted to speak with Petitioner about having other relationships and it was better not to see him anymore was admissible, was not hearsay, and if it was, fell under the state of mind exception as to the sexual battery charge.[2]

The victim's other sister, Summer Fields, testified that the victim told her Petitioner punched her in the lip.  The statement occurred over the telephone shortly before the victim died.  Trial counsel objected on the ground of hearsay.  The State argued that the forfeiture doctrine applied and that, alternatively, the statement would be admissible under the excited utterance exception to the hearsay rule.  The trial court found that the excited utterance exception applied and that it was non-testimonial in nature, "and therefore there are no *Crawford* problems."  (*Id.* at 52-53.)

The last statements at issue were made to and overhead by a bartender.  The bartender testified that the victim told her and Petitioner that she was unhappy and wanted to break up.  Trial counsel objected on grounds of hearsay, relevancy, and being unduly prejudicial.  The State argued that Petitioner had forfeited his rights to confrontation.  Alternatively, the State argued that the statements observed by the bartender were not hearsay and the statements made by the victim directly to the bartender fell under the state of mind exception.  The trial court found these statements admissible as to the consent element of the sexual battery charge and that they were "non-testimonial so *Crawford* isn't even implicated."  (*Id.* at 54-62.)

---

[2] Although Petitioner challenges Christina Fields' testimony about statements by the victim that Petitioner was possessive and calling the victim a lot, these statements were excluded at trial.  (Exh. E, p. 45.)

Petitioner presented this claim in his Rule 3.850 motion. The state court rejected

his claim on postconviction review:

> The record evidences an extensive proffer of evidence prior to trial that
> addressed these issues. At the time of Defendant's trial, *Crawford* and its
> progeny did not affect the forfeiture doctrine, holding that the doctrine acted
> as a waiver, extinguishing any confrontation argument a defendant may
> otherwise have. Defendant's cites to the Federal Rules of Evidence are
> inapplicable, as the Florida Evidence Code applies in state proceedings.
> FEC Rule 90.804 states that "a declarant is not unavailable as a witness if
> such exemption . . . inability to be present, or absence is due to the
> procurement or wrongdoing of the party who is the proponent of his or her
> statement in preventing the witness from attending or testifying." It is clear
> that the intent of this rule is to allow statements made by a murder victim in
> the trial of his or her alleged killer, and also to deter criminal defendants
> from killing or threatening potential witnesses. Any argument regarding
> specific intent would have been frivolous, and counsel is not ineffective for
> failing to make it.

(Exh. M) (internal citations omitted).

To the extent Petitioner argues that the introduction of these statements violated

the Confrontation Clause of the Sixth Amendment and trial counsel was ineffective for

not raising a *Crawford* objection, this argument is without merit. In *Crawford*, the

Supreme Court held that testimonial evidence from an absent witness may be admitted

only when the witness is unavailable and the defendant had a prior opportunity to cross-

examine the declarant. *Crawford*, 541 U.S. at 68. The *Crawford* rule applies only to

testimonial evidence. *Id.* The Supreme Court described testimonial evidence as "*ex

parte* in-court testimony or its functional equivalent" such as affidavits, depositions, and

prior testimony. *Id.* at 51-52. Stated another way, hearsay is testimonial if is "made

under circumstances which would lead an objective witness to reasonably believe that

the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52. For

example, a domestic violence victim's statements to police about abuse would be

considered testimonial, but the same statements made to a friend or family member would be non-testimonial. *See, e.g., Giles*, 554 U.S. at 376.

The victim's statements to her sisters and the bartender, as well as the statements overheard by the bartender, were made in the course of casual conversation; the victim could not have reasonably be believed that her statements would later be used at a trial. All of the statements at issue are non-testimonial and accordingly, *Crawford* is inapplicable, making any objection trial counsel might have raised meritless. Furthermore, even if trial counsel had made a *Crawford* objection, Petitioner has failed to demonstrate that the outcome of the trial would have been different, especially where the trial court explicitly ruled that *Crawford* was inapplicable to the statements to Summer Fields and the bartender.

As to Petitioner's *Giles* argument, he alleges counsel was constitutionally ineffective for failing to argue that the forfeiture by wrongdoing doctrine–an exception to the Confrontation Clause that applies if the defendant's wrongdoing prevented a witness from testifying–required specific intent to prevent the witness from testifying. In *Giles*, the Supreme Court reversed a murder conviction where the victim's prior statements to police were admitted because the defendant was deemed to have forfeited his right to challenge them on confrontation grounds because he was responsible for her unavailability. The Court clarified that in a Confrontation Clause context, the forfeiture by wrongdoing doctrine only applied where the defendant had a specific intent to make the witness unavailable to testify. *Giles*, 554 U.S. at 367-68.

Petitioner's argument fails for several reasons. First, the trial court did not admit the disputed statements on the grounds of the forfeiture doctrine–rather, the trial court

found that each statement fell within a recognized exception to the hearsay rule.

Second, trial counsel could not have a raised an objection under *Giles* because it was

decided in 2008, well after Petitioner's 2005 trial. Trial counsel cannot be deemed

deficient for failing to predict a change in the law. *See, e.g., United States v. Ardley*,

273 F.3d 991, 993 (11th Cir. 2001) ("In this circuit, we have a wall of binding precedent

which shuts out any contention that an attorney's failure to anticipate a change in the

law constitutes ineffective assistance of counsel."). Finally, Petitioner's argument fails

because even if trial counsel had raised a specific intent argument, it would have been

inapplicable because, as the *Giles* Court pointed out, "only *testimonial* statements are

excluded by the Confrontation Clause. Statements to friends and neighbors about

abuse and intimidation . . . would be excluded, if at all, only by hearsay rules, which are

free to adopt" a version of the forfeiture doctrine that does not require specific intent.

*Giles*, 554 U.S. at 376 (emphasis in original). The statements at issue are non-

testimonial, and the trial court determined that they fell within recognized hearsay

exceptions.

The Court concludes that Petitioner has failed to show that counsel rendered

ineffective assistance by not raising a *Crawford* or *Giles* objection to testimony

regarding statements made by the victim prior to her death. Accordingly, Petitioner has

failed to show that the state court's rejection of this claim was contrary to, or an

unreasonable application of *Strickland.*

### Claim Two: Failure to object to prosecutor's comments during closing

Petitioner alleges that trial counsel was ineffective for failing to object to the

prosecutor's comments during closing arguments. The prosecutor commented during

closing that in his initial statements to police, Petitioner did not mention that he and the victim had engaged in any sex acts, yet at trial his defense was one of consent. Petitioner contends that these are improper comments on his right to remain silent and that counsel should have objected.

Petitioner presented this claim in his Rule 3.850 motion. The state court rejected his claim on postconviction review:

> These statements cannot be fairly construed as improper comments on any of Defendant's rights. Rather, they are simply argument, calculated to cast doubt on Defendant's theory of the case. He made voluntary statements to the police and was not under arrest at the time. His explanation of the events was that he and the victim talked in the living room until she passed out, at which point he removed her pants to make her more comfortable. At no time did he mention that possibility that he and the victim had engaged in any sex acts. The prosecutor's argument directly addresses the conflict between Defendant's initial statements (and omissions) and his consent defense. The state was entitled to exploit inconsistencies of a defense, just as Defendant was entitled to exploit inconsistencies in the State's case. The comments were not objectionable, and counsel cannot be deemed deficient for failing to object or move for a mistrial.

(Exh. M) (internal citations omitted).

It is well-settled that improper jury argument by the prosecution violates a defendant's constitutional right to a fair trial in some circumstances. *See, e.g., Cronnon v. State*, 587 F.2nd 246, 251 (5th Cir. 1978). "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Davis v. Kemp*, 829 F.2d 1522, 1527 (11th Cir. 1987). The Court applies a two-step process in reviewing such a claim: (1) the Court considers whether the argument was improper; and (2) whether any improper argument was so prejudicial as to render the trial fundamentally unfair. *Id.* at 1526. Thus, "'[t]he

relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id*. at 1526-27 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)). A trial is fundamentally unfair if there is a reasonable probability that but for the prosecutor's improper remarks, the outcome of the trial would have been different. *Williams v. Kemp*, 846 F2d 1276, 1283 (11th Cir. 1988).

In this instance, the state court concluded that the comments did not constitute improper closing argument. Petitioner has shown no error in this conclusion. Because Petitioner's defense relied on his assertion that the sex acts were consensual, it was reasonable for the prosecutor to point out Petitioner's omissions in his initial statements to police.

Even if any of the prosecutor's comments were arguably objectionable, Petitioner has failed to show that he was prejudiced by counsel's failure to object because viewing the record as a whole he has not shown that the cited comments rendered his trial fundamentally unfair. In the absence of any showing of prejudice, Petitioner has failed to show that the state court's rejection of this claim was contrary to or an unreasonable application of *Strickland*.

### Claim Three: Advising petitioner not to testify

Petitioner alleges that counsel was ineffective for advising him not to testify at trial. According to Petitioner, his testimony would have bolstered his consent defense. This claim was also presented in Petitioner's Rule 3.850 motion and rejected by the state court, who noted that defense attorneys were reasonably worried about the damaging effects of cross-examination if he were to testify:

> The decision to argue the State's lack of proof as to non-consent rather than subject Defendant to cross-examination is not an unreasonable one under <u>Strickland</u>. Furthermore, any advice is irrelevant in light of Defendant's statements to the Court regarding his decision not to testify. According to the record, Defendant stated that he understood that the decision to testify was his and his alone, regardless of any advice. The fact that Defendant may now regret his decision is not a basis for a new trial.

(Exh. M) (internal citations omitted).

A criminal defendant has a fundamental right to testify in his defense. *Rock v. Arkansas*, 483 U.S. 44, 52 (1987). "Although often framed as a right to testify, it is more properly framed as a right to choose whether to testify." *United States v. Hung Thien Ly*, ___ F.3d ___, 2011 WL 2848477 (11th Cir. 2011) (citing *United States v. Teague*, 953 F.2d 1525, 1532 (11th Cir.1992) (en banc)). "Like other fundamental trial rights, the right to testify is truly protected only when the defendant makes his decision knowingly and intelligently." *Hung Thien Ly*, 2011 WL at *4 (citations omitted). "In cases where a defendant is represented by counsel, counsel is responsible for providing the advice needed to render the defendant's decision of whether to testify knowing and intelligent." *Id*. (citing *Teague*, 953 F.2d at 1533).

Petitioner has pointed to no evidence in the record that controverts the state court's finding at trial that Petitioner freely and voluntarily waived his right to testify, and the finding on postconviction review that counsel's performance in this regard was not deficient. The trial transcript reflects that the court and counsel made an inquiry into whether Petitioner was aware of his right to testify and the consequences of testifying, and Petitioner willingly waived that right. (Exh. E., pp. 543-45.) Moreover, Petitioner has offered nothing suggesting that there is any reasonable probability that the outcome of the trial would have been different had he elected to testify at trial, against the advice of

counsel. Trial counsel's strategy to avoid damaging cross-examination of Petitioner at was a reasonable one. Under these circumstances, Petitioner has failed to establish that the state court's rejection of this claim was contrary to, or an unreasonable application of, *Strickland*.

### Claim Four: Failure to elicit exculpatory or mitigating evidence from Det. Creamer

Petitioner alleges that counsel was ineffective because he failed to question defense witness Detective John Creamer regarding statements Defendant made after he was arrested. Specifically, Petitioner argues that introduction of his statements to Det. Creamer that he believed the victim enjoyed rough sex, he used his hand and a foreign object to penetrate her anus and vagina, that she was awake and consented at the time, and that he accidentally killed her would support his consent defense or at least support a finding of a lesser offense such as excusable homicide or manslaughter.

The state court rejected this claim in Petitioner's Rule 3.850 motion, finding the statements to be inadmissible hearsay under Florida Evidence Code Rule 90.801 and any attempt to introduce them would have been objected to and the objection sustained. Accordingly, the state court found that trial counsel was not deficient for failing to attempt to introduce inadmissible evidence. (Exh. M)

As the state court pointed out, "[s]elf-serving statements are not admissible" under the Florida Evidence Code. *Lott v. State,* 695 So. 2d 1239, 1243 (Fla. 1997); *Cotton v. State,* 763 So. 2d 437, 439 (Fla. 4th DCA 2000) ("When a defendant seeks to introduce his own out-of-court exculpatory statement for the truth of the matter stated, it is inadmissible hearsay.") Trial counsel's decision to refrain from a meritless evidentiary argument was a reasonable one. Under these circumstances, Petitioner has failed to

establish that the state court's rejection of this claim was contrary to, or an unreasonable

application of, *Strickland*.

**Claim Five: Failure to move to suppress evidence found at his apartment**

Petitioner alleges that counsel was ineffective for failing to file a motion to

suppress evidence seized at his apartment during a warrantless search.  Specifically,

Petitioner takes issue with a pair of torn panties and other evidentiary items that were

collected when first responders and police arrived on the scene in response to a 911 call

reporting that a woman was unresponsive at Petitioner's residence.  Petitioner contends

that the search was illegal and trial counsel should have objected.

In reviewing this same claim on postconviction review, the state court rejected

Petitioner's argument, finding that the requisite exigent circumstances and probable

cause existed and that a motion to suppress would have failed:

> According to the trial record, police at the scene originally thought the victim
> committed suicide.  However, given Defendant's explanation of the events
> and dubious explanation for the large amounts of blood in different parts of
> the house, probable cause existed to conduct a limited search for the
> bloody items.  As for exigent circumstances, Defendant had already told
> police he had removed the victim's clothes, bathed her, and dressed in
> some of his own clothes.  Even during the interview he was attempting to
> cover up evidence.  The scene was unsecured, with paramedics,
> firefighters, police officers, Defendant, and the victim's sister milling about.
> Defendant had not been arrested and it was realistic for officers to believe
> that he or someone else could clean up the blood, dispose of evidence, or
> otherwise contaminate the scene.  The limited seizure of the bloody items
> was not an unreasonable on given these circumstances.  Counsel was not
> ineffective for failing to explore this strategy.  Furthermore, a search warrant
> for the house was obtained within a few hours and all of the evidence
> Defendant challenges would have inevitably been discovered under the
> warrant.

(Exh. M) (internal citations omitted).

Trial counsel reasonably believed that there were no grounds for a motion to

suppress where the evidence was gathered after Petitioner consented to emergency personnel entering his home, there was blood in various areas of the house, and Petitioner told officers that the blood coming from the victim's vaginal area soaked through five towels.  The panties and other items Petitioner refers to in his habeas petition were in the hamper on top of which these towels were located.  Probable cause and exigent circumstances existed to warrant a limited seizure of bloody items from the residence.

The Court concludes that Petitioner has failed to show that counsel rendered ineffective assistance by not filing a motion to suppress that, under the facts of the case, would have been denied.  Furthermore, even if a motion to suppress had been successful, Petitioner has failed to demonstrate that the outcome of the trial would have been different.  Accordingly, Petitioner has failed to show that the state court's rejection of this claim was contrary to, or an unreasonable application of *Strickland.*

### Claim Six: Cumulative error

Petitioner alleges that the cumulative effect of trial counsel's errors amount to a deprivation of his constitutional right to effective counsel.  The postconviction court rejected this claim, finding no error in any of the other grounds he raised and accordingly, no cumulative effect.  (Exh. M.)

In rejecting a similar "cumulative error" argument made by a section 2254 petitioner, the Eleventh Circuit has stated "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim."  *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009)(*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has

held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

As previously discussed, Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance. Therefore, there are no errors to accumulate and Petitioner was not denied effective assistance of counsel nor has he demonstrated his trial was fundamentally unfair. *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept. 30, 2009)("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair."). Accordingly, Petitioner's sixth claim for relief for relief has no merit.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition for a Writ of Habeas Corpus, Doc. 1, be **DENIED,** and that a certificate of appealability be

**DENIED**.

**IN CHAMBERS** this 13th day of November 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

<u>**NOTICE TO THE PARTIES**</u>
**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**